ALMON, Justice.
In this appeal we are presented with a boundary line dispute between several coterminous landowners. John Willmer Tilli-son brought this action against G.E. and Gladys E. Taylor, John H. and Iva Lee Maxwell, and Larry Maxwell. The trial court found the boundary line to be an old fence line, as contended by the defendants, rather than a line shown by a survey made in 1986 at the instance of John Tillison.[1]
In 1966 Tillison purchased approximately 96 acres of land in Calhoun County, Alabama, from Preston Welch. At the time Tillison purchased his tract of land it was bordered to the north by land owned by L.C. East. All of the defendants purchased their respective tracts of land from East or from his daughter. G.E. and Gladys E. Taylor purchased approximately 16 acres in 1967. John H. and Iva Lee Maxwell purchased their property in 1969. Larry Maxwell purchased his one acre in 1977. The fence found by the trial court to be the true boundary line is at the south of the parcels owned by the defendants and at the north of Tillison’s property. All of the parties began residing on their land shortly after their purchase of the land.
The dispute in this case centers around whether the use by the defendants of land north of the fence line and south of the boundary line as shown in Tillison’s survey was hostile or was with Tillison’s permission. Tillison contends that in 1968 he had a conversation with Mr. Taylor and that Mr. Taylor said that he was going to replace the old fence with a new one. Tilli-son testified that he told Taylor that he did not know where the property line was and that “it would be all right with [him] if [Taylor] put a fence up, and we’ll move it when we ever run the lines.” Taylor denies ever having asked permission to erect a new fence. Tillison now asserts that that conversation raised the presumption that the possession of the disputed strip of land was permissive and that the defendants failed to overcome this presumption.
“If a coterminous landowner holds actual possession of a disputed strip under claim of right, openly and exclusively for a continuous period of 10 years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location of the line originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. While intent to claim the disputed strip is required, there is no requirement that the intent be to claim property of another, as such a rule would make adverse possession dependent upon bad faith. Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully.”
Hayes v. Cotter, 439 So.2d 102, 104 (Ala.1983).
Since 1968, when Taylor tore down the old fence and replaced it with a new one, he has grazed cattle and cut hay on *431 the land in dispute — i.e., the land running from the fence northward to the survey-line. These acts are sufficient to constitute possession of the land by Taylor. This possession has been open, notorious, hostile, continuous, and exclusive, so as to establish ownership through adverse possession. Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975).
Sufficient evidence was also presented at trial that Larry Maxwell and his parents, John and Iva Maxwell, have been in open, notorious, hostile, continuous, and exclusive possession of the disputed lands claimed by them (i.e., the land between the fence and the survey line), so as to show adverse possession. Carpenter v. Huffman, supra. The Maxwells have kept horses on the land and have periodically cut the grass.
Further, there was evidence that the fence has been in existence and has been recognized in the community as the boundary line between the properties for 75 years. Preston Welch’s sister, Emma Miller, testified that until 1927 she lived on the Tillison property, which was then owned by her father. Ms. Miller testified that her family recognized the fence line as the property line and that she believed that the fence had been in place approximately 75 years. Clifford Johnson also testified that he had lived in the area all of his 78 years and that he was familiar with the fence and the property around it. Mr. Johnson testified that the fence had been in its present location all of his life. Tillison presented no evidence to rebut this testimony, although he testified that he did not learn of the existence of the fence until after he purchased his property.
When, as in this case, evidence is presented ore tenus and a trial court establishes a boundary line between coterminous lands, the judgment is presumed correct and need only be supported by credible evidence in order to withstand appeal. Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105 (Ala.1983). In such cases, the trial court’s findings will not be disturbed unless plainly erroneous or manifestly unjust. Jemison v. Belcher, 368 So.2d 849 (Ala.1979). The record in this case clearly contains an abundance of credible evidence supporting the finding of the trial court. The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX and ADAMS, JJ., concur.
STEAGALL, J., concurs in the result.

. Tillison's wife, Nancy Yvonne Tillison, is also a grantee on the deed by which the Tillisons acquired the property and is a party to this action, but took no active part in the case.