This case involves a boundary line dispute and the question of adverse possession between coterminous landowners. Appellees (plaintiffs below), Lloyd and Dorothy Swann, brought this action, pursuant to Tit. 47, § 2, Code of Alabama 1940 (Recomp. 1958), against appellant, Howard Murphree, to determine the boundary line between their properties.[1] The disputed strip of land is approximately 100 feet in width between a government survey forty line and an old wire fence line. Appellee claims that the old fence line is the true boundary line. Appellant contends the true line is the government survey line, which is the line between the parties as set forth in their respective deeds.
The trial court, after hearing the evidence ore tenus, concluded that the boundary line was located at the old fence line. From this final judgment of the trial court, appellant brings this appeal. After a careful review of the evidence, we reverse and remand with directions.
Swann's title is based upon a deed dated September 25, 1970 to land described as follows:
 "All that part of land bounded by Smith Reservoir and lying above the 510 foot contour line above mean sea level being (being) a parcel of land containing one acre more or less in S.W. Corner of NE 1/4 of SW 1/4 and 7 acres more or less lying East of East Sipsey Fork River in NE 1/4 of SW 1/4 all in Section 35 Township 11 Range 6 West."
Murphree's title is based upon a deed which conveyed the SE 1/4 of NW 1/4 Section 35, Township 11, South of Range 6, West to him in 1956. The land is located in Winston County near Smith Lake. *Page 330 
Swann claims title to the disputed strip between the government survey line (the North line of the NW 1/4 of SW 1/4 of Section 35, and the South line of the SE 1/4 of NW 1/4 of Section 35) and the old fence line by virtue of adverse possession.
There is evidence in the record that the fence was erected in "about 1925" by Murphree's father and one Stephenson, owner of the NE 1/4 of the SW 1/4. Murphree, the appellant, was a young boy then but said he remembered helping to put up the fence on "what they thought was the 40 line." Murphree testified that it was the intention of both parties to put the fence on the line.
There was much evidence that the successors in title of the Stephensons used the land up to the old fence. Murphree himself became one of those successors in title when he bought the NE 1/4 of the SE 1/4 in 1946. He owned it until November 10, 1955, when he conveyed it to one Elam and wife. Elam cut timber on the tract and conveyed to one Leigeber, and wife, on December 19, 1955. Leigeber's widow conveyed to Helen M. Cornish, as trustee for Leigeber heirs doing business as H.D.J. Land Company on March 10, 1958. Cornish, etc., d/b/a H.D.J. Land Company, conveyed the subject tract to the Swanns on September 25, 1970.
An agent for H.D.J. Land Company testified, without dispute, that the company did not intend to claim title to any land other than that shown by the deed. In this case, that would mean that the H.D.J. Land Company did not intend to claim title to the disputed strip.
Swann finds himself in the predicament the complainant faced in McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160 (1954). Swann has no title to the disputed strip because it is not within the description of his deed from H.D.J. Land Company, and he has not had adverse possession for the required period.
Swann testified that his immediate grantor did not show him where the land lines were located. Swann had a survey made of his north-south line and the 510 contour line for Smith Lake, when he purchased it, but did not have a survey made of his north boundary line (the disputed line which runs east-west) at that time. He did talk to Murphree about the north boundary line and testified that Murphree told him the fence was "a mistake" and that Murphree pointed out a surveyor's stake to him, which Swann testified "was the quarter corner of this section, I guess." Furthermore, the record affirmatively shows that Swann paid Murphree $750 for an easement and right-of-way for ingress and egress to his tract and that a portion of the easement went across the disputed strip. The instrument granting the easement is dated September 4, 1971.
Some of Swann's predecessors in title may have been able to claim title to the disputed strip by adverse possession. We need not decide that question. Murphree himself was one of those predecessors in title.
Swann cannot claim title by adverse possession here. InWilson v. Cooper, 256 Ala. 184, 54 So.2d 286 (1951), this Court held that where a deed described the land conveyed by government survey, the grantee can acquire no title to a disputed area beyond the government line, which his predecessors acquired by adverse possession.
As already pointed out, Swann's grantor testified that the H.D.J. Land Company made no claim to the disputed strip. Consequently, the proposition of "tacking" adverse possession of an immediate grantor is inapplicable. Cf. Carpenter v.Huffman, 294 Ala. 189, 314 So.2d 65 (1975), where grantee was put into actual possession of disputed land adversely held by his immediate grantor.
The evidence is without dispute that Swann did not acquire title to the disputed strip by adverse possession. He could not "tack" the adverse possession of any predecessor in title.
The findings and conclusions of the trial court are palpably wrong. The judgment is reversed and the cause is remanded with directions to establish the government survey line as the boundary line between these parties. *Page 331 
REVERSED AND REMANDED, WITH DIRECTIONS.
HEFLIN, C.J., and FAULKNER, SHORES and BEATTY, JJ., concur.
[1] During the trial of this cause, counsel for the appellant moved the trial court to strike appellee, Dorothy Swann, from this action in that she was divorced from the appellee and no longer was a joint owner of the property in question. Accordingly, the trial court, without objection of counsel, severed Dorothy Swann as a party-plaintiff from these proceedings.